No. 25-2259

IN THE

# United States Court of Appeals for the Fourth Circuit

---

MICHAEL JAMES TAYLOR,

*Plaintiff-Appellant*,

v.

UNITED STATES,

*Defendant-Appellee*,

DRUG ENFORCEMENT ADMINISTRATION, ET AL.,

*Defendants*.

---

On Appeal from the U.S. District Court for the
District of South Carolina, No. 2:23-cv-04671
Judge Richard M. Gergel

---

**PLAINTIFF-APPELLANT MICHAEL JAMES TAYLOR'S OPENING BRIEF**

---


Daniel Zemel
THE KRUDYS LAW FIRM, PLC
919 E. Main Street, Suite 2020
Richmond, VA 23219
(804) 774-7950

Mark Calhoun
CALHOUN LAW FIRM
16 Broad Street, #1
Charleston, S.C. 29401
(843) 991-5631

Gregory Cui
Andrew Eslich
RODERICK & SOLANGE
MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, D.C. 20002
(202) 869-3434
gregory.cui@macarthurjustice.org

*Counsel for Plaintiff-Appellant Michael James Taylor*

## DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Fed. R. App. P. 26.1, Plaintiff-Appellant makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity?

No.

2. Does party/amicus have any parent corporations?

No.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?

No.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of this litigation?

No.

5. Is party a trade association?

No.

6. Does this case arise out of a bankruptcy proceeding?

No.

7. Is this a criminal case in which there was an organizational victim?

No.

## TABLE OF CONTENTS

DISCLOSURE STATEMENT .......... i

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 4

STATEMENT OF THE ISSUES .......... 4

STATEMENT OF THE CASE .......... 5

I. Factual Background .......... 5

II. Procedural History .......... 8

STANDARD OF REVIEW .......... 9

SUMMARY OF ARGUMENT .......... 10

ARGUMENT .......... 14

I. The Discretionary-Function Exception Does Not Apply Because The DEA Agents' Misconduct Was The Result Of Carelessness And Laziness. .......... 15

A. The Exception Does Not Apply To Misconduct Resulting From Carelessness And Laziness. .......... 15

B. The Agents' Wrongful Arrest And Detention Of Mr. Taylor Resulted From Carelessness And Laziness. .......... 22

C. The District Court Ignored This Court's Precedent In Favor Of A Categorical Rule That Would Create Blanket Immunity For Investigative Misconduct. .......... 24

II. The Discretionary-Function Exception Also Does Not Apply Because The Agents Violated The Constitution. ....... 28

A. The Discretionary-Function Exception Does Not Apply To Misconduct That Violates The Constitution. ............................................................... 28

B. The Agents' Wrongful Arrest And Detention Of Mr. Taylor Violated The Constitution. ........................ 32

CONCLUSION ......................................................................... 39

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Anson v. United States*,
294 F. Supp. 3d 144 (W.D.N.Y. 2018) ............................................ 20

*Berkovitz v. United States*,
486 U.S. 531 (1988) ............................................................................ 31

*Birnbaum v. United States*,
588 F.2d 319 (2d Cir. 1978) ................................................................ 31

*Cannon v. Macon County*,
1 F.3d 1558 (11th Cir. 1993) ............................................................... 32

*Caskey v. Fenton*,
No. 22-3100, 2022 WL 16964963 (6th Cir. Nov. 16, 2022) ................. 36

*Chess v. United States*,
836 F. Supp. 2d 742 (N.D. Ill. 2011) ................................................... 21

*Coulthurst v. United States*,
214 F.3d 106 (2d Cir. 2000) .............................................. 11, 19, 20, 23

*Dalehite v. United States*,
346 U.S. 15 (1953) ........................................................... 12, 15, 16, 31

*Garcia v. County of Riverside*,
817 F.3d 635 (9th Cir. 2016) ............................................................... 32

*Gay v. Wall*,
761 F.2d 175 (4th Cir. 1985) ........................................................ 38, 39

*Gray v. Cuyahoga County Sheriff's Dep't*,
150 F.3d 579 (6th Cir. 1998) ............................................................... 32

*Hartman v. Holder*,
No. 1:00-cv-06107, 2009 WL 792185
(E.D.N.Y. Mar. 23, 2009) .................................................................... 20

*Head v. Rakowski*,
695 F. Supp. 3d 663 (D. Md. 2023) .................... 30

*Holmes v. United States*,
No. 2:18-cv-00487, 2021 WL 2139078
(S.D. Ind. May 26, 2021) .................... 21

*Indian Towing Co. v. United States*,
350 U.S. 61 (1955) .................... 14

*Kansas v. Glover*,
589 U.S. 376 (2020) .................... 35, 36

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) .................... 9

*Kornegay v. United States*,
802 F. Supp. 3d 767 (D. Md. 2025) .................... 17, 18

*Lewis v. United States*,
No. 1:24-cv-89, 2024 WL 5515722
(S.D. W. Va. Nov. 13, 2024) .................... 30

*Limone v. United States*,
579 F.3d 79 (1st Cir. 2009) .................... 29

*Lins v. United States*,
847 F. App'x 159 (4th Cir. 2021) .................... 9

*Loumiet v. United States*,
828 F.3d 935 (D.C. Cir. 2016) .................... 12, 29

*Lyttle v. United States*,
No. 4:10-cv-142, 2011 U.S. Dist. LEXIS 156321
(E.D.N.C. Nov. 14, 2011) .................... 30

*Martin v. United States*,
605 U.S. 395 (2025) .................... 16, 17, 23

*Martinez v. United States*,
997 F.3d 867 (9th Cir. 2021) .................... 29

*Matt v. United States*,
No. 0:22-cv-01092, 2022 WL 14445081
(D.S.C. Oct. 25, 2022) .......... 19

*McKinney v. United States*,
950 F. Supp. 2d 923 (N.D. Tex. 2013) .......... 20

*Medina v. United States*,
259 F.3d 220 (4th Cir. 2001) .......... 1, 13, 25, 28

*Mesa v. United States*,
123 F.3d 1435 (11th Cir. 1997) .......... 24, 26

*Mesa v. United States*,
837 F. Supp. 1210 (S.D. Fla. Oct. 29, 1993) .......... 26

*Myers & Myers, Inc. v. United States Postal Service*,
527 F.2d 1252 (2d. Cir. 1975) .......... 28, 29

*Owen v. City of Independence*,
445 U.S. 622 (1980) .......... 30, 31

*Palay v. United States*,
349 F.3d 418 (7th Cir. 2003) .......... 20, 21

*Parrish v. United States*,
157 F. Supp. 3d 434 (E.D.N.C. 2016) .......... 18

*Raz v. United States*,
343 F.3d 945 (8th Cir. 2003) .......... 29

*Red Lake Band of Chippewa Indians v. United States*,
800 F.2d 1187 (D.C. Cir. 1986) .......... 15, 28

*Rich v. United States*,
811 F.3d 140 (4th Cir. 2015) .......... *passim*

*Russo v. City of Bridgeport*,
479 F.3d 196 (2d Cir. 2007) .......... 36

*Sledge v. United States*,
883 F. Supp. 2d 71 (D.D.C. 2012) .......... 20

*Smith v. Munday*,
848 F.3d 248 (4th Cir. 2017) ........................................................ *passim*

*Smith v. United States*,
No. 1:20-cv-00670, 2020 WL 7405408 (M.D. Pa. Dec. 17, 2020) ........................................................ 20

*Sosa v. Martin County*,
57 F.4th 1297 (11th Cir. 2023) ........................................................ 38

*Thurston v. Frye*,
99 F.4th 665 (4th Cir. 2024) ........................................................ 34, 37, 38

*Trail v. Cressell*,
494 F. Supp. 3d. 349 (W.D. Va. 2020) ........................................................ 36

*Tyree v. United States*,
814 F. App'x 762 (4th Cir. 2020) (per curiam) ........................................................ *passim*

*United States v. Gaubert*,
499 U.S. 315 (1991) ........................................................ *passim*

*Webb v. United States*,
789 F.3d 647 (6th Cir. 2015) ........................................................ 34

*Xiaoxing Xi v. Haugen*,
68 F.4th 824 (3d Cir. 2023) ........................................................ 29

**Statutes**

28 U.S.C. § 1346(b) ........................................................ 8

28 U.S.C. § 1346(b)(1) ........................................................ 14

28 U.S.C. § 2680(a) ........................................................ 1, 8, 14

**Other Authorities**

Akhil Reed Amar, *Of Sovereignty and Federalism*,
96 YALE L.J. 1425 (1987) ........................................................ 28

James E. Pfander, *Zones of Discretion at Common Law*, 116 NW. U. L. REV. ONLINE 148 (2021) ............ 31

Note, *Recovering the Lost Meaning of the Federal Tort Claims Act's "Discretionary Function Exception,"* 138 HARV. L. REV. 654 (2024) ............ 30

## INTRODUCTION

This case concerns two critical limitations on the scope of the discretionary-function exception to the Federal Tort Claims Act (FTCA). That exception shields the United States from liability for certain misconduct by federal officials based upon "a discretionary function or duty." 28 U.S.C. § 2680(a). The exception is meant to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991). As this Court has recognized, the exception does not apply to decisions that are not based on policy considerations, but which instead are "marked by individual carelessness or laziness." *Rich v. United States*, 811 F.3d 140, 147 (4th Cir. 2015). In addition, the exception does not apply to conduct that violates the Constitution, as "federal officials do not possess discretion to violate constitutional rights." *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001). Both limitations apply here.

In 2020, federal Drug Enforcement Administration agents misidentified Plaintiff Michael James Taylor as Daniel Frazer, the target of an extensive surveillance operation. The agents had recorded a call

in which Frazer spoke with another member of a drug conspiracy, and they had personally observed Frazer meet with his co-conspirator on two occasions. As a result, the agents knew what Frazer looked like and approximately how old he was. It was clear that Frazer was their target.

Mr. Taylor, in contrast, was never the subject of the agents' investigation. Mr. Taylor's name only appeared because Frazer had somehow registered his car in Mr. Taylor's name. But even that connection was dispelled. Mr. Taylor's driver's license confirmed, based on differences in age, appearance, and address, that he was not Frazer.

Several months after conducting the surveillance, however, the agents mistakenly arrested Mr. Taylor and wrongfully detained him for more than three weeks. As a result, Mr. Taylor was fired from both of his jobs. The charges were later dismissed, but the damage was done.

The agents' blunder was not the kind of discretionary decision that the FTCA was designed to protect. It was not based on the careful weighing of policy considerations; it was simply a grievous error resulting from carelessness and laziness. And because the agents lacked probable cause to believe Mr. Taylor had done anything wrong, their decision to arrest and detain him violated the Constitution.

The district court erroneously held, however, that the discretionary-function exception applies because "[t]he decision as to how to locate and identify the subject of an arrest warrant prior to service of the warrant is susceptible to policy analysis." JA307. That categorical ruling is incompatible with both of the critical limitations on the discretionary-function exception that this Court has recognized. Each limitation is sufficient on its own to hold that the discretionary-function exception does not apply. For both reasons, the decision below should be reversed.

## JURISDICTIONAL STATEMENT

On November 26, 2024, the district court granted in part Defendants' motion to dismiss, but denied the motion as to Mr. Taylor's negligence claim. JA145-146. On September 13, 2025, the district court granted Defendants' motion as to Mr. Taylor's remaining negligence claim. JA307-308. On September 15, 2025, the district court entered a final judgment dismissing Mr. Taylor's action. JA309. Mr. Taylor timely appealed on October 15, 2025. JA310-311.

## STATEMENT OF THE ISSUES

1. Whether the discretionary-function exception of the Federal Tort Claims Act applies to Mr. Taylor's claims even though they challenge misconduct that was the result of carelessness and laziness, not policy considerations.

2. Whether the discretionary-function exception of the Federal Tort Claims Act applies to Mr. Taylor's claims even though they challenge misconduct prohibited by the Constitution.

## STATEMENT OF THE CASE

### I. Factual Background

In April 2020, the Drug Enforcement Administration (DEA) was investigating a drug distribution conspiracy in Charleston County, South Carolina. JA22. Plaintiff Michael James Taylor was not part of that conspiracy or involved in any drug distribution, and the DEA was not investigating him. JA23. Instead, their investigation led them to a person named Daniel Frazer. JA22.

The DEA first determined that Frazer was involved in the conspiracy through electronic cell phone monitoring. The DEA conducted a surveillance operation in which they tapped the cell phones of individuals believed to be part of the drug conspiracy, none of whom was Mr. Taylor. JA22. During the operation, one known suspect received a call from a cell phone number the agents had not yet encountered. JA22. The agents determined that it was Frazer who used the phone number to call one of the known suspects, and the agents recorded the two of them speaking. JA22.

Having identified Frazer as a suspect, the agents located him and surveilled him in North Charleston on April 23, 2020. JA22-23. The

agents were able to observe Frazer as he exited a car to meet the known suspect he had called. JA23. The agents saw what Frazer looked like and approximately how old he was. JA23. They also knew what Frazer's voice sounded like from the recorded phone call. JA22. Frazer does not look or sound like Mr. Taylor, and the two are different ages. JA23.

The agents also observed the car Frazer drove to the meeting—a red Nissan Altima with South Carolina registration number RWQ 106. JA22-23. Frazer purchased that car, and he is the only one who has ever owned it or used it. JA23.

Somehow, however, Frazer registered his car under Mr. Taylor's name to secure car insurance. JA23. This is the only way in which Mr. Taylor appeared to have any connection to Frazer. JA23.

That false connection, however, was quickly dispelled. After retrieving the car's registration from the state department of motor vehicles, the agents obtained a copy of Mr. Taylor's driver's license, which included his picture as well as his address. JA23. Frazer did not live at that address. JA23. Based on the differences in Mr. Taylor's appearance and age, as well as his address, it was clear that Mr. Taylor was not Frazer. JA23.

The DEA agents continued surveilling Frazer and observed him a second time meeting with the known suspect at a Taco Bell in Charleston. JA23. Once again, the agents were able to confirm what Frazer looked like and approximately how old he was. JA23.

Nevertheless, several months later, when the agents went to make an arrest, they misidentified Mr. Taylor as Frazer. JA23. The agents had not conducted any investigation of Mr. Taylor and they did not have any reason to suspect he had participated in the drug conspiracy. JA23-24. But the agents obtained an arrest warrant for Mr. Taylor, not Frazer. JA24.[1]

Using the warrant, the agents arrested Mr. Taylor on November 2, 2020, and detained him for twenty-two days at the Charleston County Detention Center. JA23. The agents eventually realized their mistake and released Mr. Taylor. JA23. The charges against him were dismissed on March 18, 2021. JA23. But as a result of the arrest and detention, Mr. Taylor spent more than three weeks in wrongful detention and was fired from his two jobs. JA23.

---

[1] To date, the United States has not provided a copy of the warrant to Mr. Taylor. The parties have conducted limited discovery only as to the DEA's policies and procedures. *See* JA186.

## II. Procedural History

On September 18, 2023, Mr. Taylor sued the United States, the DEA, and the agents, alleging violations of the Fourth and Fourteenth Amendments, as well as several state tort claims, including false arrest, false imprisonment, negligence, and assault and battery. JA13-20; JA24-25; JA27-28. To bring these claims against the United States, Mr. Taylor invoked the Federal Tort Claims Act (FTCA), which waives the United States' sovereign immunity for claims "for money damages" based on injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting with the scope of his office or employment" if such claims would be authorized by state law. JA28; 28 U.S.C. § 1346(b). As required by the FTCA, Mr. Taylor notified the DEA of his claims prior to bringing suit. JA144-145.

On May 20, 2024, the United States moved to dismiss Mr. Taylor's claims, arguing, among other things, that they were barred by the FTCA's discretionary-function exception. JA40-46. Under that exception, the FTCA retracts its waiver of sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a).

The district court granted the United States' motion based on the discretionary-function exception in two orders. First, on November 26, 2024, the district court granted the motion as to Mr. Taylor's claims based on false arrest, false imprisonment, and assault and battery. JA142. Second, on September 13, 2025, the district court granted the motion as to Mr. Taylor's negligence claim. JA308. In the court's view, the discretionary-function exception applied to Mr. Taylor's claims because the DEA agents' actions "involved discretionary conduct" and "[t]he decision as to how to locate and identify the subject of an arrest warrant prior to service of the warrant is susceptible to policy analysis." JA307.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's dismissal for lack of jurisdiction under the FTCA. *See Lins v. United States*, 847 F. App'x 159, 162 (4th Cir. 2021). Because Defendants argued that the discretionary-function exception applies on the face of the complaint, *see* JA255 n.4, the facts alleged in the complaint must be "taken as true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

## SUMMARY OF ARGUMENT

The district court erred by failing to apply two critical limitations on the scope of the discretionary-function exception. Either is sufficient to reverse the district court's decision.

I. First, the discretionary-function exception does not apply because the agents' wrongful arrest and detention of Mr. Taylor was "marked by individual carelessness or laziness," not the kind of protected policy judgment that the exception is designed to protect. *Rich*, 811 F.3d at 147.

I.A. In *Rich*, this Court recognized that the discretionary-function does not apply to official misconduct that is "marked by individual carelessness or laziness." *Id.* The FTCA waives sovereign immunity for claims based on such misconduct because carelessness and laziness do not implicate protected policy considerations, and thus permitting liability would not invite any "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *Gaubert*, 499 U.S. at 323. As a result, officials who engage in such misconduct are not "shielded by the discretionary function exception." *Rich*, 811 F.3d at 147.

This Court is not alone in recognizing this important limitation on the discretionary-function exception. The Second and Seventh Circuits, as well as numerous lower courts, have similarly held that carelessness and laziness necessarily fall outside the scope of the exception. *See, e.g.*, *Coulthurst v. United States*, 214 F.3d 106, 111 (2d Cir. 2000) ("Such actions do not reflect the kind of considered judgment 'grounded in social, economic, and political policy' which the DFE is intended to shield from judicial second-guessing.").

I.B. Here, the agents' wrongful arrest and detention of Mr. Taylor was marked by carelessness and laziness. Based on an extensive surveillance operation, the agents determined that Frazer, not Mr. Taylor, was engaged in a drug conspiracy. But instead of arresting Frazer, they mistakenly arrested and detained Mr. Taylor. No social, economic, or political policy justified Mr. Taylor's arrest. The agents simply made a grievous error caused by "individual carelessness or inattention." *Tyree v. United States*, 814 F. App'x 762, 770 (4th Cir. 2020) (per curiam). The discretionary-exception function does not shield such misconduct.

I.C. Contrary to *Rich* and *Tyree*, the district court adopted a categorical rule that any misconduct relating to investigation or arrest necessarily qualifies under the discretionary-function exception. Such a rule is incompatible with this Court's precedent, and it would give federal law enforcement officials blanket immunity for misconduct relating to investigations, arrests, and detention, undermining the fundamental purpose of the FTCA.

II. Second, the discretionary-function exception also does not apply because the agents violated the Constitution, and thus necessarily exceeded the scope of their discretion.

II.A. This Court, along with at least six other circuits, has recognized "that the discretionary-function exception does not shield government officials from FTCA liability when they exceed the scope of their constitutional authority." *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (collecting cases). The FTCA protects official discretion "[w]here there is room for policy judgment and decision." *Dalehite v. United States*, 346 U.S. 15, 36 (1953). There is no room for differences in policy judgment, however, when it comes to fundamental

constitutional limits. As this Court put it, "federal officials do not possess discretion to violation constitutional rights." *Medina*, 259 F.3d at 225.

II.B. Here, the agents violated the Constitution by arresting and detaining Mr. Taylor with no evidence that he "was a participant in, connected to, or even physically present near" criminal activity. *Smith v. Munday*, 848 F.3d 248, 254 (4th Cir. 2017). The agents conducted no investigation of Mr. Taylor, and their investigation of Frazer yielded exculpatory information confirming that Mr. Taylor was not their target. Nevertheless, the agents arrested Mr. Taylor without probable cause and continued detaining him long after they knew he was not the person they sought. The discretionary-function exception does not shield such misconduct.

For these reasons, this Court should reverse the decision below.

## ARGUMENT

Mr. Taylor's claims against the United States are authorized by the FTCA. *See* 28 U.S.C. § 1346(b)(1). The FTCA was enacted specifically "to compensate the victims of negligence in the conduct of governmental activities." *Indian Towing Co. v. United States*, 350 U.S. 61, 68 (1955). Mr. Taylor's claims fit squarely within the law's express authorization.

The district court erred by concluding that Mr. Taylor's claims are barred by the discretionary-function exception. *See* 28 U.S.C. § 2680(a). That exception applies only if the act in question "involves an element of judgment or choice," and the "judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy." *Rich*, 811 F.3d at 144.

Here, the exception does not apply for two independent reasons. First, the actions in question were not based on the kind of policy judgment that the FTCA was designed to protect because they were the result of the DEA agents' carelessness and laziness. Second, even if the actions did involve some type of policy judgment, they necessarily exceeded the officers' discretion because they violated the Constitution. Either ground is sufficient to hold that the exception does not apply.

## I. The Discretionary-Function Exception Does Not Apply Because The DEA Agents' Misconduct Was The Result Of Carelessness And Laziness.

### A. The Exception Does Not Apply To Misconduct Resulting From Carelessness And Laziness.

The discretionary-function exception does not apply to Mr. Taylor's claims because the challenged conduct was "marked by individual carelessness or laziness," not the protected exercise of policy judgment. *Rich*, 811 F.3d at 147. The discretionary-function exception "protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323; *see Dalehite*, 346 U.S. at 42 (applying exception to decisions based on "considerations more or less important to the practicability of the Government's fertilizer program"). Congress created the exception to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323. Therefore, for the exception to apply, the decision in question must "involve a measure of policy judgment." *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1196 (D.C. Cir. 1986).

Misconduct resulting from carelessness or laziness does not reflect protected policy judgments, and thus is not shielded by the discretionary-

function exception. As the Supreme Court has explained, "[W]e know that the draftsmen did not intend [the FTCA] to relieve the Government from liability for such common-law torts as an automobile collision caused by the negligence of an employee." *Dalehite*, 346 U.S. at 34. Even though driving a car involves an element of judgment, these types of torts do not involve the kind of "social, economic, and political policy" choices the FTCA protects. *Gaubert*, 499 U.S. at 323.

For example, in *Martin v. United States*, 605 U.S. 395 (2025), the Court addressed claims based on federal agents' mistaken raid of the wrong house, despite having "visited the correct house to document its features and identify a staging area" before the raid. *Id.* at 399. The Court noted that "[a]ll agree that the Federal Tort Claims Act permits some suits for wrong-house raids," and remanded for the Eleventh Circuit to evaluate the claim under the discretionary-function exception. *Id.* at 399, 414-15. In a concurring opinion, Justice Sotomayor emphasized that "it is hard to see how [the lead agent's] conduct in this case, including his allegedly negligent choice to use his personal GPS and his failure to check the street sign or house number on the mailbox before breaking down Martin's door and terrorizing the home's occupants, involved the kind of

policy judgment that the discretionary-function exception was designed to protect." *Id.* at 419.

Consistent with the Supreme Court's guidance, this Court has recognized that FTCA claims may proceed if they are based on conduct that "is marked by individual carelessness or laziness." *Rich*, 811 F.3d at 147; *see Kornegay v. United States*, 802 F. Supp. 3d 767, 786 (D. Md. 2025) ("*Rich* explained that 'discretionary conduct cannot be grounded in a policy decision when that conduct is marked by individual carelessness or laziness.'"). For example, in *Rich*, this Court recognized that the discretionary-function exception did not apply to claims based on prison officials' careless failure to intervene against an attack on the plaintiff by several other incarcerated people. *See Rich*, 811 F.3d at 142. The plaintiff specifically alleged that prison officials failed to properly screen or search the attackers before placing them in the same unit with him. *See id.* This Court held that the FTCA did not apply if the attackers gained access to a weapon used in the attack as a result of the officials' "careless inattention" in conducting pat-down searches. *Id.* at 147. In that case, "the prison officials would not be shielded by the discretionary function exception because no policy considerations would be implicated." *Id.*

This Court applied *Rich*'s recognition that the discretionary-function exception does not bar claims based on carelessness in *Tyree v. United States*, 814 F. App'x 762 (4th Cir. 2020) (per curiam). In that case, as in *Rich*, an incarcerated individual alleged that prison officials failed to protect him from an attack by other incarcerated people. *See id.* at 762. This Court held that the discretionary-function exception did not apply if the conduct was grounded in negligence "outside" of policy considerations. *Id.* at 769. This Court noted several situations in which the officers' conduct would not implicate policy considerations, including the officers being asleep or taking a cigarette or snack break during the attack. *Id.* at 768. In such cases, the "conduct would be 'marked by individual carelessness or laziness,'" and thus it would fail to meet the second prong of the discretionary-function exception. *Id.* (quoting *Rich*, 811 F.3d at 147).[2]

---

[2] Consistent with this Court's instructions in *Rich* and *Tyree*, lower courts within this Circuit have found the discretionary-function exception inapplicable to a variety of misconduct marked by carelessness and laziness. *See Kornegay*, 802 F. Supp. 3d at 786 (finding the plaintiff's complaint sufficiently alleged careless inattention such that applying the discretionary-function exception was inappropriate for a shooting by Pentagon police); *Parrish v. United States*, 157 F. Supp. 3d 434, 443-44 (E.D.N.C. 2016) (finding the discretionary-function exception to be

This Court's decisions in *Rich* and *Tyree* are consistent with other Circuits that have held that the discretionary-function exception does not apply to misconduct resulting from carelessness and laziness. For example, in *Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000), the Second Circuit held that when conduct is based on "laziness" or "careless[] inattenti[on]," the discretionary-function exception "does not shield the United States from liability." *Id.* at 110. There, an incarcerated individual was lifting weights in the prison exercise room when the cables of an exercise machine snapped. *See id.* at 107. The court provided examples of negligent acts that "neither involve[d] an element of judgment or choice within the meaning of *Gaubert* nor [were] grounded in considerations of governmental policy." *Id.* at 109. Such negligent acts included "laziness or haste" in inspecting the machine, being "distracted or inattentive" and thus failing to see the fraying cable, or noticing the frayed cable but being "too lazy" to make the repair or handle the paperwork. *Id.* "Such actions," the court stated, "do not reflect the kind

---

inapplicable when the post office negligently inspected or failed to inspect a damaged sidewalk); *Matt v. United States*, No. 0:22-cv-01092, 2022 WL 14445081, at *3 (D.S.C. Oct. 25, 2022) (finding the discretionary-function exception inapplicable where prison officials could have acted in a "careless or lazy manner" in failing to prevent an assault).

of considered judgment 'grounded in social, economic, and political policy' which the [discretionary-function exception] is intended to shield from 'judicial "second-guessing."'" *Id.* at 111. The court made clear that barring damages even when the conduct is the result of carelessness would "lead to absurd results." *Id.* at 110.[3]

Based on similar reasoning, the Seventh Circuit has recognized that careless actions are not "the types of discretionary judgments that the statutory exception was intended to exempt from liability." *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003). In *Palay*, an

---

[3] *See also Hartman v. Holder*, No. 1:00-cv-06107, 2009 WL 792185, at *7-11 (E.D.N.Y. Mar. 23, 2009) (finding the discretionary-function exception inapplicable when prison officers negligently failed to report, conduct rounds, or be at their post in relation to an attack by fellow prisoners); *Anson v. United States*, 294 F. Supp. 3d 144, 159-60 (W.D.N.Y. 2018) (finding the discretionary-function exception inapplicable when United States Marshals carelessly instructed the plaintiff to enter the transportation vehicle in such a way that resulted in injury); *Sledge v. United States*, 883 F. Supp. 2d 71, 90 (D.D.C. 2012) (finding the discretionary-function exception inapplicable when prison officials carelessly failed to process visitation requests); *Smith v. United States*, No. 1:20-cv-00670, 2020 WL 7405408, at *2-5 (M.D. Pa. Dec. 17, 2020) (finding the discretionary-function exception inapplicable when the plaintiff's complaint alleged that BOP conduct not grounded in considerations of public policy in relation to a weightlifting machine injury); *McKinney v. United States*, 950 F. Supp. 2d 923, 928-30 (N.D. Tex. 2013) (finding no legitimate policy considerations supported officials' conduct in negligently transporting prisoners).

incarcerated individual sued prison officials after rival gang members assaulted him, alleging that the officials were negligent in assigning him to a unit where known members of the rival gang were kept, failing to provide secure housing, and failing to administer timely medical care. *See id.* at 421. While the court acknowledged that decisions related to the housing of prisoners could be discretionary, the court also found the attack could have been the result of mere inattention. *Id.* at 432. For example, the officer monitoring the unit when the violence broke out could have been "simply asleep" or "enjoy[ing] a cigarette or a snack." *Id.* "That type of carelessness," the court explained, "would not be covered by the discretionary function exception, as it involves no element of choice or judgment grounded in public policy considerations." *Id.*[4]

Thus, this Court and others recognize that misconduct marked by carelessness or laziness is not shielded by the discretionary-function

---

[4] Lower courts in the Seventh Circuit have also found the discretionary-function exception inapplicable for such careless or lazy conduct. *See Holmes v. United States*, No. 2:18-cv-00487, 2021 WL 2139078, at *5 (S.D. Ind. May 26, 2021) (finding the discretionary-function exception inapplicable where there was no evidence of policy judgment, as opposed to mere carelessness, when prison officials failed to prevent an assault); *Chess v. United States*, 836 F. Supp. 2d 742, 750-51 (N.D. Ill. 2011) (finding the discretionary-function exception inapplicable where prison officials failed to take action to prevent an attack).

exception. Such misconduct is not "based on considerations of public policy," and thus falls within the FTCA's waiver of sovereign immunity. *Gaubert*, 499 U.S. at 323; *Rich*, 811 F.3d at 147.

### B. The Agents' Wrongful Arrest And Detention Of Mr. Taylor Resulted From Carelessness And Laziness.

Like the misconduct in *Rich* and *Tyree*, the DEA agents' misconduct here—arresting and detaining the wrong person—resulted from the agents' carelessness and laziness. Such misconduct is not shielded by the discretionary-function exception.

The DEA agents had more than sufficient information to know that Mr. Taylor was not Frazer, the suspect in the drug conspiracy they were pursuing. They had listened to Frazer speak with a known conspiracy suspect on a recorded call, and they had observed Frazer twice during meetings with the same suspect in Charleston County, where the drug conspiracy operated. JA22-23. Through this surveillance operation, the DEA agents knew what Frazer looked like, what his voice sounded like, and approximately how old he was. JA23. At the same time, the DEA agents knew what Mr. Taylor looked like and how old he was because they had obtained a copy of his driver's license. JA23. They also knew that Mr. Taylor lived at a different address from Frazer. JA23. These

differences in appearance, age, and address made clear that Mr. Taylor was not Frazer, the person the agents were seeking.

Despite this information, the agents still mistakenly arrested Mr. Taylor instead of Frazer because they were "simply asleep" at the wheel. *Tyree*, 814 F. App'x at 768. Like the federal agents in *Martin*, these agents had done surveillance to confirm their intended target, and yet somehow chose the wrong target when it came time to make the arrest. *See Martin*, 605 U.S. at 399 (explaining that the officers had "visited the correct house to document its features," and failed to notice the street sign, house number, and other indications that they were at the wrong house). This type of blunder is the result of "laziness or haste," or from being "distracted or inattentive." *Coulthurst*, 214 F.3d at 109.

As a result, the agents' conduct is not "shielded by the discretionary function exception because no policy considerations would be implicated." *Rich*, 811 F.3d at 147. The agents here caused harm not because they were making difficult judgments balancing social, economic, and political considerations, but because they were not paying attention. *See Rich*, 811 F.3d at 147. The FTCA is meant to ensure compensation and accountability in these circumstances.

### C. The District Court Ignored This Court's Precedent In Favor Of A Categorical Rule That Would Create Blanket Immunity For Investigative Misconduct.

Ignoring this Court's precedents, the district court reached a contrary conclusion by adopting a categorical rule from the Eleventh Circuit that "[t]he decision as to how to locate and identify the subject of an arrest warrant prior to the service of the warrant is susceptible to policy analysis." JA307 (quoting *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997)). Rather than ask whether any such policy considerations were implicated here, the district court erroneously held that any misconduct relating to identifying and arresting a suspect is inherently shielded by the discretionary-function exception. JA307; *see Mesa*, 123 F.3d at 1438 (concluding that "the decision regarding how to locate and identify the subject of an arrest warrant is fundamentally rooted in policy considerations").

Such a categorical rule is incompatible with this Court's recognition that decisions that could, in other circumstances, be made based on policy considerations are nevertheless excluded from the discretionary-function exception if the actual misconduct in question is "marked by individual carelessness or laziness." *Rich*, 811 F.3d at 147; *see also Tyree*,

814 F. App'x at 770 (recognizing that even "if a BOP policy concerning responses to emergency situations contains an implicit reservation of discretion to delay response because of other prison priorities, that reservation would apply only when the delay was actually attributable to those prison priorities"). That is exactly what happened in *Rich*. This Court recognized that "under typical circumstances," the "manner in which prison officials perform patdowns" can be determined through policy considerations that would be protected by the discretionary-function exception. *Rich*, 811 F.3d at 147. Nevertheless, the Court held that the plaintiff could still establish that the discretionary-function exception did not apply by showing that his harm was caused by "careless inattention" in the performance of a pat-down. *Id.* In that situation, the discretionary-function exception would not apply because "the officers did not exercise their judgment as to which of a range of possible courses of action was the wisest"; they simply caused harm through "individual carelessness or inattention." *Tyree*, 814 F. App'x at 770.

That is the case here. While investigative decisions can be based on policy considerations, that is not always true. *See Medina*, 259 F.3d at 229 (finding a particular decision to arrest "was clearly clothed in

public policy considerations" such as the plaintiff's "special relationship with his victim"). When investigative misconduct is instead the result of carelessness or laziness, as here, this Court's decisions in *Rich* and *Tyree* control.

In addition to setting forth an improper categorical rule, *Mesa* is distinguishable because it cited policy considerations that are not applicable to this case. In *Mesa*, the plaintiff did not dispute that federal agents properly obtained a warrant for a person named Pedro Pablo Mesa, and they arrested a person named Pedro Pablo Mesa. *See Mesa v. United States*, 837 F. Supp. 1210, 1212 (S.D. Fla. Oct. 29, 1993). The plaintiff alleged, however, that the agents arrested "the wrong Pedro Pablo Mesa"—that there were two people with the same name, and the agents failed to identify and arrest the correct one. *Id.* The Eleventh Circuit concluded that the plaintiff's claim implicated policy considerations like "the urgency of apprehending the subject in light of such factors as the potential threat the subject poses to public safety and the likelihood that the subject may destroy evidence." *Mesa*, 123 F.3d at 1438. The court also cited limitations on "available resources" and "how to allocate those resources" across different investigations. *Id.*

Based on those types of considerations, the Eleventh Circuit held that the discretionary-function exception applied.

Here, the agents' misidentification of Mr. Taylor was not based on any such policy considerations. As Mr. Taylor alleged in his complaint, the agents did not arrest him because they feared he would harm someone or destroy evidence; indeed, the agents were not investigating Mr. Taylor at all. JA23. Nor were the agents pressed for time or limited in their resources; to the contrary, they were able to conduct an extensive surveillance operation that included electronic monitoring of multiple cell phone numbers and in-person observations of Frazer's two meetings with the other known suspect. JA22-23. After conducting those operations in April 2020, the agents did not make their arrest until months later, on November 2, 2020. JA23. Their misidentification of Mr. Taylor as Frazer was not prompted by difficult, split-second decisions based on competing policy considerations. They were simply too careless or lazy to ensure that the right person was arrested and detained. For that reason, the discretionary-function exception does not apply.

## II. The Discretionary-Function Exception Also Does Not Apply Because The Agents Violated The Constitution.

### A. The Discretionary-Function Exception Does Not Apply To Misconduct That Violates The Constitution.

The discretionary-function exception also does not apply here for a second, independent reason: Even if the agents' misconduct involved some kind of policy judgment, they necessarily exceeded their lawful discretion by violating the Constitution. The discretionary-function exception only allows officials to make policy-oriented choices within the scope of their lawful discretion, and as this Court has recognized, "federal officials do not possess discretion to violate constitutional rights." *Medina*, 259 F.3d at 225; *see Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252, 1261 (2d. Cir. 1975) (recognizing "a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority"); *Red Lake Band of Chippewa Indians*, 800 F.2d at 1196 ("[A] decision cannot be shielded from liability if the decisionmaker is acting without actual authority.").[5]

[5] *See also* Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 YALE L.J. 1425, 1506-07 (1987) (explaining that an action that violates the Constitution is necessarily "ultra vires and void" because the Constitution functions as a "limitation[] on federal power itself").

For this reason, this Court, along with at least six other circuits, has recognized "that the discretionary-function exception does not shield government officials from FTCA liability when they exceed the scope of their constitutional authority." *Loumiet*, 828 F.3d at 943 (collecting cases).[6] For example, in *Martinez v. United States*, 997 F.3d 867 (9th Cir. 2021), the court addressed whether claims based on "allegedly tortious actions during a criminal investigation related to a border crossing" were covered by the discretionary-function exception. *Id.* at 872. The Ninth Circuit held that "[e]ven if the agents' actions involved elements of discretion, agents do not have discretion to violate the Constitution." *Id.*

---

[6] *See Xiaoxing Xi v. Haugen*, 68 F.4th 824, 838 (3d Cir. 2023) ("[W]e—and nearly every circuit to have considered the issue—have held that 'conduct cannot be discretionary if it violates the Constitution' because '[f]ederal officials do not possess discretion to violate constitutional rights.'"); *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) ("It is elementary that the discretionary function exception does not immunize the government from liability for actions proscribed by federal statute or regulation. . . . Nor does it shield conduct that transgresses the Constitution."); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) ("We must also conclude that the FBI's alleged surveillance activities fall outside the FTCA's discretionary-function exception because Raz alleged they were conducted in violation of his First and Fourth Amendment rights."); *Myers & Myers, Inc.*, 527 F.2d at 1261 ("It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority.").

at 877 (citation omitted). As a result, their misconduct fell outside the scope of the discretionary-function exception.[7]

This limitation reflects Congress' intent to preserve only lawful, policy-based decisionmaking authority. Congress chose the term "discretionary" against the backdrop of common-law principles that restricted officers to exercise their discretion within the bounds of the law. *See* Note, *Recovering the Lost Meaning of the Federal Tort Claims Act's "Discretionary Function Exception,"* 138 HARV. L. REV. 654, 667-68 (2024) (explaining that "FTCA was written against this rich common law backdrop"). For example, in *Owen v. City of Independence*, 445 U.S. 622 (1980), the Supreme Court explained that common-law immunity protected cities "from suits challenging 'discretionary' decisions," but "a municipality has no 'discretion' to violate the Federal Constitution." *Id.* at 648-49. Thus, federal courts could examine "whether the municipality

[7] District courts within the Fourth Circuit routinely apply this limitation, as well. *See, e.g.*, *Lewis v. United States*, No. 1:24-cv-89, 2024 WL 5515722, at *16 (S.D. W. Va. Nov. 13, 2024); *Head v. Rakowski*, 695 F. Supp. 3d 663, 686 (D. Md. 2023) (citing *Medina* and finding discretionary-function exception inapplicable based on allegations of retaliation for filing grievance); *Lyttle v. United States*, No. 4:10-cv-142, 2011 U.S. Dist. LEXIS 156321, *19 (E.D.N.C. Nov. 14, 2011) (citing *Medina* and holding that violations of constitutional rights are not shielded).

has conformed to the requirements of the Federal Constitution," and doing so would not amount to "second-guess[ing] the 'reasonableness' of the city's decision" or the "resolution of competing policy considerations." *Id.* The violation of constitutional rights "is necessarily one for judicial inquiry." *Id.* at 650.[8]

In the same way, the FTCA's discretionary-function exception was designed to protect federal officials' discretion in situations "[w]here there is room for policy judgment and decision." *Dalehite*, 346 U.S. at 34, 36; *see Berkovitz v. United States*, 486 U.S. 531, 538 (1988) (noting that the discretionary-function exception protects "the range of choice accorded by federal policy and law"). There is no room for policy judgments that violate the Constitution. *See Birnbaum v. United States*, 588 F.2d 319, 329 (2d Cir. 1978) ("Discretion may be as elastic as a rubber-band, but it, too, has a breaking point."). An action that violates the Constitution is simply not a lawful judgment that officials may make, and thus necessarily exceeds the discretion protected by the discretionary-function exception.

---

[8] *See also* James E. Pfander*, Zones of Discretion at Common Law*, 116 NW. U. L. REV. ONLINE 148, 167 (2021) (documenting how federal officials were routinely "held liable in damages" under the Constitution).

### B. The Agents' Wrongful Arrest And Detention Of Mr. Taylor Violated The Constitution.

By arresting and detaining Mr. Taylor instead of Frazer, the DEA agents violated the Fourth Amendment. *See Smith v. Munday*, 848 F.3d 248, 252 (4th Cir. 2017) (analogizing tort claims based on wrongful arrest and detention to Fourth Amendment violations for malicious prosecution).[9] Such claims have two elements: (1) the agents seized Mr. Taylor pursuant to legal process without probable cause, and (2) the criminal proceedings terminated in Mr. Taylor's favor. *Id.* at 253. Mr.

---

[9] Some courts have also grounded this type of claim under the Due Process Clause. *See, e.g.*, *Gray v. Cuyahoga County Sheriff's Dep't*, 150 F.3d 579, 583 (6th Cir. 1998) ("[T]he trier of fact could find that the failure by [officers] to ascertain that they were holding the wrong person violated Gray's due-process rights."); *Garcia v. County of Riverside*, 817 F.3d 635, 641 (9th Cir. 2016) ("No person deserves to be incarcerated without good reason, and incarceration on a warrant without a reasonable investigation of identity, when the circumstances demand it, is subject to review under the Due Process Clause."); *Cannon v. Macon County*, 1 F.3d 1558, 1564 (11th Cir. 1993) ("[A] jury could find that [the officer] acted with deliberate indifference when he completed the arrest procedure and obtained a fugitive warrant for her arrest without speaking to [the plaintiff] and without making any attempt to identify her as the person wanted in Kentucky."). Either the Fourth Amendment or the Due Process Clause would be a sufficient basis for finding a constitutional violation for purposes of concluding that the discretionary-function exception does not apply here.

Taylor's charges were dismissed, JA23, so the only issue here is the existence of probable cause.

Officers clearly lack probable cause when they have "no evidence" about a person's "conduct, let alone whether she was a participant in, connected to, or even physically present near" criminal activity. *Smith*, 848 F.3d at 254. For example, in *Smith*, a police officer was investigating a suspected drug sale and received information that a person named "April Smith" had participated in the transaction. *Id.* at 251. The officer searched a police database for that name and found three April Smiths, including one person who lived in Lincoln County and had multiple prior convictions. *Id.* The officer had no information indicating that the April Smith involved in the drug transaction had a criminal record or lived in Lincoln County. *Id.* But rather than investigate further to confirm whether he had the right person, the officer obtained an arrest warrant and arrested Ms. Smith, detaining her for about eighty days until the prosecution dismissed the charges against her. *Id.* at 252.

This Court recognized that the officer in *Smith* lacked probable cause, emphasizing that "[t]here is no evidence that the officers investigated Smith herself, or found any indication that Smith

frequented the site of the drug sale that day, that month, or at all." *Id.* at 253-54. The "scant evidence" the officer relied on to obtain the arrest warrant and seize Ms. Smith "barely" met "the threshold of 'mere suspicion,' let alone the threshold of probable cause." *Id.* at 254. Indeed, the evidence was so weak that this Court held that "deferring to the magistrate judge" who issued the arrest warrant "would be inappropriate." *Id.* at 255; *see Thurston v. Frye*, 99 F.4th 665, 677-78 & n.13 (4th Cir. 2024) (holding that a warrant did not "establish the officers' objective reasonableness" because "[n]o reasonable officer in such circumstances could believe that a warrant should issue").[10]

Here, like the officers in *Smith*, the DEA agents "simply did not have enough information for any reasonable or prudent person to believe there was probable cause" to arrest Mr. Taylor. *Smith*, 848 F.3d at 253.

---

[10] Similarly, in *Webb v. United States*, 789 F.3d 647 (6th Cir. 2015), the Sixth Circuit reversed summary judgment where an officer's mistaken identification of the defendants threw the probable cause determination made by a grand jury into question. *Id.* at 651-52. There, the prosecution obtained a grand-jury indictment based on testimony from an officer who mistakenly identified others as the defendants after surveillance operations. *See id.* 661-62, 665-66. The Sixth Circuit reversed the district court's holding that there was probable cause to prosecute the defendant, holding that "[a]bsent [the officer's] allegedly false testimony," there was no remaining evidence to establish probable cause. *Id.* at 663, 665-66.

They had conducted "no investigation" of Mr. Taylor, and they therefore had no information indicating that Mr. Taylor had ever participated in the drug conspiracy, spoken with members of the drug conspiracy, or even been "physically present near" the drug activity in question. *Id.*; *see* JA23. Unlike the plaintiff in *Smith*, moreover, Mr. Taylor did not share the same name as the person the agents were pursuing. Every indication the agents had pointed to Frazer being a member of the drug conspiracy, not Mr. Taylor: The agents listened to Frazer speak with another conspiracy member, and they watched Frazer meet with the other conspiracy member multiple times. JA22-23. They had no such evidence of any involvement by Mr. Taylor.

The only piece of information connecting Mr. Taylor to the drug conspiracy was the fact that Frazer registered his car under Mr. Taylor's name, and that alone is not sufficient for probable cause. At most, the name on a car's registration can support a reasonable inference that the same person is driving the car for purposes of making an investigative stop under the lower reasonable-suspicion standard. *See Kansas v. Glover*, 589 U.S. 376, 386 (2020). Mere knowledge of the name on a car's registration, without "information confirming or negating that the owner

is the driver," is not sufficient for probable cause. *Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *5 (6th Cir. Nov. 16, 2022).

The registration in this case could not even support the lower standard of reasonable suspicion because the agents possessed additional "exculpatory information" that dispelled any suspicion that the registration could have created. *Glover*, 589 U.S. at 386. In *Glover*, the Court emphasized that "the presence of additional facts might dispel" even the inference necessary for reasonable suspicion. *Id.* at 386. "For example, if an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not raise a suspicion." *Id.*; *see also Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007) (finding Fourth Amendment violation based on "the ease with which the evidence exculpating Russo—which was in the officers' possession—could have been checked").[11]

---

[11] *See also Trail v. Cressell*, 494 F. Supp. 3d. 349, 358 (W.D. Va. 2020) (finding no probable cause because "[b]ased on the discrepancies known to him at the time—the different first names and the CI's failure to identify [the defendant] from the photograph—an investigative officer, exercising reasonable diligence, would have done more to solidify the preliminary conclusion that [the defendant] was, in fact, the correct target").

Here, multiple pieces of exculpatory information alerted the agents that Mr. Taylor was not the owner and user of the car that they were investigating. As in the example given in *Glover*, for example, the agents knew that Mr. Taylor and Frazer were different ages. JA23. Indeed, the agents knew that Mr. Taylor did not look like Frazer, that the two were different ages, and that the two lived at different addresses. JA23. On top of that, the only person the agents ever observed driving the car was Frazer; they never observed Mr. Taylor in the car. JA22-23. As a result, the agents would not even have had reasonable suspicion to stop Mr. Taylor, much less probable cause to arrest and detain him. *See Smith*, 848 F.3d at 255 ("Here, evidence placing Smith at the crime is so scant—indeed, it is nonexistent—that deferring to the magistrate judge would be inappropriate.").

That critical defect would have been apparent on the face of the agents' warrant application, unless the agents concealed information from the magistrate. *See Thurston*, 99 F.4th at 677 n.13 ("This leaves us with only two options: Either the officers included this fact in the warrant application, in which case they likely transgressed *Leon*, or they omitted it from the application, in which case they likely violated *Franks*.").

Either way, the complete lack of probable cause, including based on the exculpatory evidence known to the agents, "fatally undermines the evidentiary value of the warrant." *Id.* As a result, arresting and detaining Mr. Taylor violated the Fourth Amendment.

In addition to unlawfully arresting Mr. Taylor without probable cause, the agents also violated the Constitution by continuing to detain him for twenty-two days, well "beyond a time when they knew him to be innocent." *Gay v. Wall*, 761 F.2d 175, 178-79 (4th Cir. 1985).[12] In *Gay*, this Court held that a plaintiff stated a due process claim by alleging that officers arrested him using an arrest warrant and continued detaining him despite "actual knowledge of his innocence." *Id.* at 178. In that case, the officers secured a warrant after two eyewitnesses to a robbery identified the plaintiff. *Id.* at 176. The police, however, realized that the plaintiff was not the person they were seeking, including because his fingerprints "did not match those at the scene of the crime." *Id.* Despite knowing this, however, the police continued detaining the plaintiff for at

[12] *See also Sosa v. Martin County*, 57 F.4th 1297, 1313 (11th Cir. 2023) (Rosenbaum, J., dissenting) ("And we are not alone in concluding that the Constitution protects detainees against continued detention once it is or should be known that the detainee is entitled to release. At least four of our sister circuits agree.").

least a week. *Id.* This Court made clear that even a "facially valid warrant" did not insulate the officers from liability, because "the defendants deprived him of his liberty beyond a time when they knew him to be innocent." *Id.* at 178-79.

Here, Mr. Taylor was detained beyond the time the agents knew that he was not Frazer, the person they had been seeking. Mr. Taylor had never been implicated by any eyewitness in the drug conspiracy, and nothing about him matched the evidence the agents had recovered about Frazer: not Mr. Taylor's fingerprints, name, appearance, age, address, or anything else. Yet the agents continued detaining Mr. Taylor for twenty-two days, causing him to lose his jobs after more than three weeks in wrongful detention. As a result, the agents' conduct violated the Constitution, and for this reason, the discretionary-function exception does not apply.

## CONCLUSION

For the foregoing reasons, the Court should reverse the decision below.

Dated: February 13, 2026 Respectfully submitted,

/s/ *Gregory Cui*
Gregory Cui
Andrew Eslich
RODERICK & SOLANGE
MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington D.C. 20002
(202) 869-3434
gregory.cui@macarthurjustice.org
andrew.eslich@macarthurjustice.org

Daniel Zemel
THE KRUDYS LAW FIRM, PLC
919 E. Main Street, Suite 2020
Richmond, VA 23219
(804) 774-7950
dzemel@krudys.com

Mark Calhoun
CALHOUN LAW FIRM
16 Broad Street, #1
Charleston, S.C. 29401
(843) 991-5631
mark@calhounlawfirmsc.com

*Counsel for Plaintiff-Appellant*
*Michael James Taylor*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because it contains 7,876 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

Dated: February 13, 2026

/s/ *Gregory Cui*
Gregory Cui

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, I electronically filed the foregoing *Plaintiff-Appellant Michael James Taylor's Opening Brief* with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Gregory Cui*
Gregory Cui