**No. 25-2259**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**MICHAEL JAMES TAYLOR**,

Plaintiff-Appellant,

v.

**UNITED STATES OF AMERICA**,

Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

---

# BRIEF OF APPELLEE

---


BRYAN P. STIRLING
United States Attorney

LEE E. BERLINSKY
Assistant United States Attorney
United States Attorney's Office
151 Meeting Street, Suite 200
Charleston, South Carolina 29401

ANNA L. EDWARDS
Counsel to the Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, dc 20530
(202) 812-2249
anna.edwards@usdoj.gov
*Attorneys for Appellee*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

STATEMENT OF JURISDICTION .......... 5

STATEMENT OF THE ISSUE .......... 5

STATEMENT OF THE CASE .......... 5

A. Factual Background .......... 5

B. Procedural History .......... 7

STANDARD OF REVIEW .......... 9

SUMMARY OF THE ARGUMENT .......... 10

ARGUMENT .......... 13

I. The District Court Properly Dismissed Taylor's FTCA Claims Under The Discretionary Function Exception .......... 13

A. The Discretionary Function Exception Applies To Discretionary Conduct Susceptible to Policy Considerations. .......... 13

B. Taylor Challenges Purely Discretionary Actions .......... 14

C. Taylor Challenges Discretionary Conduct Susceptible To Policy Analysis. .......... 15

II. Taylor Fails to Overcome The Discretionary Function Exception. .......... 21

A. The DEA's Investigation Did Not Rest On The Sort Of Careless Or Lazy Conduct That Is Categorically Not Susceptible To Policy Analysis. .......... 21

B. Taylor Cannot Avoid The Discretionary Function Exception By Pointing To Any Constitutional Violation. .......... 25

CONCLUSION ..... 31

STATEMENT REGARDING ORAL ARGUMENT ..... 33

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ..... 34

CERTIFICATE OF SERVICE ..... 35

## TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Awad v. United States*,
807 F. App'x 877 (10th Cir. 2020) ........................................................ 19, 24, 25

*Baker v. McCollan*,
443 U.S. 137 (1979) ..........................................................................................31

*Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*,
262 F. App'x 556 (4th Cir. 2008).................................................................. 27, 30

*Baum v. United States*,
986 F.2d 716 (4th Cir. 1993)..........................................................................2, 11, 16

*Berkovitz v. United States*,
486 U.S. 531 (1988) ...................................................................................... 14, 15

*Bernaldes v. United States*,
81 F.3d 428 (4th Cir. 1996) ..............................................................................16

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
403 U.S. 388 (1971) ..............................................................................................7

*Blackwell v. Barton*,
34 F.3d 298 (5th Cir. 1994)...............................................................................30

*Blanco Ayala v. United States,*
982 F.3d 209 (4th Cir. 2020)........................................................................*passim*

*Clendening v. United States*,
19 F.4th 421 (4th Cir. 2021)........................................................................ 18, 22

*Colonial Penn Ins. Co. v. Coil*,
887 F.2d 1236 (4th Cir. 1989) .............................................................................6

*Dalehite v. United States*,
346 U.S. 15 (1953) .............................................................................................22

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) .............................................................................................13

*Durham v. Horner*,
690 F.3d 183 (4th Cir. 2012) ........................................................................ 12, 27

*Gaubert v. United States*,
499 U.S. 315 (1991) ........................................................................... *passim*

*Gay v. Wall*,
761 F.2d 175 (4th Cir. 1985) ........................................................................ 12, 31

*Gerstein v. Pugh*,
420 U.S. 103 (1975) .....................................................................................27

*Gilmour v. Gates, McDonald & Co.*,
382 F.3d 1312 (11th Cir. 2004).....................................................................28

*Goodwin v. Metts*,
885 F.2d 157 (4th Cir. 1989).........................................................................27

*Hill v. California*,
401 U.S. 797 (1971) .....................................................................................30

*Indem. Ins. Co. of N. Am. v. United States*,
569 F.3d 175 (4th Cir. 2009) ........................................................................18

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009).........................................................................10

*Linder v. United States*,
937 F.3d 1087 (7th Cir. 2019)....................................................................2, 26

*Martin v. United States*,
605 U.S. 395 (2025) ........................................................................... 23, 24

*McKinney v. Richland Cty. Sheriff's Dep't*,
431 F.3d 415 (4th Cir. 2005).................................................................. 4, 12, 28

*Medina v. United States*,
259 F.3d 220 (4th Cir. 2001)........................................................... 2, 15, 16, 26

*Mesa v. United States*,
123 F.3d 1435 (11th Cir. 1997).................................................................*passim*

*Miller v. Prince George's Cnty.*,
475 F.3d 621 (4th Cir. 2007) ........................................................................27

*Milligan v. United States*,
670 F.3d 686 (6th Cir. 2012) ........................................................................ 17, 20

*Mozlof v. United States*,
502 U.S. 301 (1992) ........................................................................13

*Palay v. United States*,
349 F.3d 418 (7th Cir. 2003) ........................................................................3, 22

*Pooler v. United States*,
787 F.2d 868 (3d Cir. 1986) ........................................................................20

*Rich v. United States*,
811 F.3d 140 (4th Cir. 2015) ........................................................................ 3, 9, 21, 22

*Sabow v. United States*,
93 F.3d 1445 (9th Cir. 1996) ........................................................................16

*Shivers v. United States*,
1 F.4th 924 (11th Cir. 2021) ........................................................................26

*Smith v. Munday*,
848 F.3d 248 (4th Cir. 2017) ........................................................................29

*Suter v. United States*,
441 F.3d 306 (4th Cir. 2006) ........................................................................*passim*

*Torchinsky v. Siwinski*,
942 F.2d 257 (4th Cir. 1991) ........................................................................ 17, 30

*Tyree v. United States*,
814 F. App'x 762 (4th Cir. 2020) ........................................................................ 22, 23

*U.S. Fid. & Guar. Co. v. United States*,
837 F.2d 116 (3d Cir. 1998) ........................................................................26

*United States v. Orleans*,
425 U.S. 807 (1976) ........................................................................13

*United States v. Talley*,
No. 2:20-cr-643 (D.S.C. 2021) ........ 6, 7, 27

*Wadkins v. Arnold*,
214 F.3d 535 (4th Cir. 2000) ........ 30

*Wood v. United States*,
845 F.3d 123 (4th Cir. 2017) ........ 3, 18

**Statutes**

28 U.S.C. § 1291 ........ 5

28 U.S.C. § 1346 ........ 5, 26

28 U.S.C. § 2674 ........ 1

28 U.S.C. § 2680 ........ 1, 13, 18, 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 10

## INTRODUCTION

Federal law enforcement officers arrested Plaintiff-Appellant Michael James Taylor after correctly identifying him as the registrant of a car involved in a drug trafficking conspiracy. Taylor was released twenty-two days later. A few months after that, the officers learned that a different person owned and had been using the car registered in Taylor's name, and the government dropped the charges. Taylor then sued the United States under the Federal Tort Claims Act (FTCA). He argues the officers should have ruled him out before arresting him. He suggests, for example, that the officers could have done a better job comparing his driver's license photograph to the person they had observed using the car. But even if that is true, it would not give rise to liability under the FTCA. As the district court recognized, the discretionary function exception plainly bars Taylor's claims.

The FTCA waives the government's sovereign immunity from certain tort lawsuits. 28 U.S.C. § 2674. But the discretionary function exception bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . , whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). That encompasses all claims premised on alleged conduct that is (i) "discretionary in nature" and (ii) "susceptible to policy analysis." *Gaubert v. United States*, 499 U.S. 315, 322–23, 325 (1991). When the first prong is satisfied, a plaintiff must overcome a presumption that the second prong is too. *Id.*

at 324–25; *Medina v. United States*, 259 F.3d 220, 228 (4th Cir. 2001). And when applying the second prong, "[t]he relevant inquiry . . . is not whether the decisions in question occurred at a planning level or whether policy considerations *were actually* contemplated in making a decision." *Blanco Ayala v. United States,* 982 F.3d 209, 217 (4th Cir. 2020) (internal quotation marks omitted). "[R]ather, the proper inquiry is whether, considering 'the inherent, objective nature of the challenged decision[s],' they are 'actions of the type normally thought to involve policy choices.'" *Id.* (quoting *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993)).

Here, Taylor does not dispute that the alleged conduct at issue was discretionary. "'No one can doubt that the investigation of (potential) crimes" is a 'discretion-laden subject[].'" *Id.* at 215 (quoting *Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019)). And Taylor cannot come close to overcoming the presumption that the type of conduct at issue is susceptible to a policy analysis. As a general matter, investigating and identifying a suspect are discretionary judgments "infused with public policy considerations." *Id.* at 217. For example, law enforcement might weigh "how extensively to investigate the location and identity of the subject" based on concerns of urgency, flight risk, or public safety. *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997). This case is no different. Whether officers should seek to arrest a person because they infer, based on vehicle

registration information coupled with visual identification, that he is the one using a car that is indisputably involved in criminal activity—or whether they should take further steps to make certain that he is the right person—fits comfortably within the range of law-enforcement decision-making susceptible to such policy judgments.

Taylor seeks to avoid that straightforward conclusion by advancing two inapt reasons why the discretionary function exemption should not apply here. *First*, he seeks to characterize the officers' conduct as "marked by individual carelessness or laziness." Opening Br. 15 (quoting *Rich v. United States*, 811 F.3d 140, 147 (4th Cir. 2015)). But the discretionary function exception protects government decisions "even when made negligently." *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017). If a bare allegation of negligence were enough, it would swallow the discretionary function exception and "seriously handicap" "federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter v. United States*, 441 F.3d 306, 312 (4th Cir. 2006) (internal quotation marks omitted). To the extent this Court has countenanced FTCA claims based on alleged careless or lazy conduct, such conduct must reflect the "type of carelessness" that "involves no element of choice or judgment grounded in public policy considerations." *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003). That is the difference between officers who were "simply asleep," *id.*, and officers who, as

here, conducted an investigation leading to an arrest and detention that turned out to have been mistaken, *see Blanco Ayala*, 982 F.3d at 216.

*Second*, Taylor argues that the discretionary function exception does not immunize government conduct that violates constitutional rights. But Taylor's FTCA claims must hinge on South Carolina tort law and are thus premised on purported negligence. There is no free-floating FTCA claim for any and all purported constitutional violations. Regardless, Taylor fails to establish any constitutional violation. The officers had probable cause to arrest Taylor as the registered owner of the vehicle, even if he turned out to be the wrong person due to highly unusual circumstances. "The fact that [the agents] did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by" the information they had collected. *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 418–19 (4th Cir. 2005). Taylor also cannot plausibly allege any violation arising from his detention (separate from his arrest); Taylor's own allegations state that the government learned he was not the person using the car *after* Taylor had already been released.

Ultimately, even if it "may not appear that an individual arrest and detention has broad policy implications, it is inescapable that when considered in the aggregate, the drawback of accepting [Taylor]'s position are quite large." *Blanco Ayala*, 982 F.3d at 217. "A system in which every instance of mistaken arrest or

detention could give rise to a suit in tort . . . would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Id.* (internal quotation marks omitted).

This Court should affirm.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1346(b)(1). Judgment was entered against Taylor on September 15, 2025. JA 309. Taylor filed a timely notice of appeal on October 15, 2025. JA 310. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court properly dismissed Taylor's FTCA claims for lack of subject matter jurisdiction because law enforcement's efforts to investigate and identify suspects are discretionary policy judgments barred from liability under the discretionary function exception?

## STATEMENT OF THE CASE

### A. Factual Background

In April 2020, a Drug Enforcement Administration (DEA) task force was conducting surveillance on a drug distribution conspiracy in Charleston, South Carolina. JA 22, 251. The operation included tapping the cellphones of known conspiracy member suspects. JA 22, 251. The DEA recorded a call between a known suspect in the conspiracy and an unknown person discussing the location and time

for a drug sale. JA 22, 150, 251. The DEA then observed the unknown person arrive in a red Nissan Altima to meet the known suspect at the planned time and location. JA 22–23, 251. On another occasion, a DEA agent observed the same red Nissan Altima meet the same known suspect at a Taco Bell. JA 23, 251.

After running the vehicle's plate information and registration, three DEA agents learned that the red Nissan Altima was registered to Taylor. JA 22, 251. Using Taylor's "South Carolina drivers license [sic] photograph" and the prior "two brief visual identifications," the agents identified Taylor as the "unknown suspect under visual surveillance." JA 23; *see also* JA 150, 251.

As a result of the DEA's investigation and presentation to a federal grand jury, Taylor was indicted for conspiracy and possession with intent to distribute cocaine. JA 33–34.[1] An arrest warrant was issued, and Taylor was arrested on November 2, 2020. JA 23. Twenty-two days later, after his detention hearing was delayed due to Taylor's counsel's requests, Taylor was released on bond. JA 23.[2]

---

[1] The Court can take judicial notice of Taylor's closed criminal case proceedings. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting this Court may take judicial notice of other court proceedings). *See* Indictment, *United States v. Talley*, No. 2:20-cr-643 (D.S.C. Oct. 20, 2020), ECF No. 3.

[2] *See* Minute Entry, *Talley*, No. 2:20-cr-643 (D.S.C. Nov. 23, 2020), ECF No. 285 (noting the "Government changes position on detention and moves for a secured bond"). On November 6, 2020, during the COVID-19 period, Taylor's attorney requested a sixteen-day notice of protection from court appearances. *See* JA 151; (Continued)

Taylor does not allege that any law enforcement officer knew that Taylor was not the person using the car before or during his detention. Rather, after law enforcement "discovered its mistake," "the charges were dismissed on or about March 18, 2021." JA 23.[3] A man named Daniel Frazer had registered the car in Taylor's name to secure car insurance. JA 23. Taylor does not allege that Frazer registered the car in Taylor's name fraudulently or without his knowledge. *See* JA 23 ("On information and belief, Mr. Frazer had previously put the red Nissan Altima's registration in the Plaintiffs [sic] name in order to secure car insurance."). Nor does he allege what their relationship was, if any, aside from not being "family." JA 23.

### B. Procedural History

Taylor sued the United States for negligence and gross negligence under the FTCA.[4] Specifically, Taylor alleges that the DEA agents were negligent in misidentifying him as the suspect because "[t]he South Carolina drivers

---

Request for Protection from Court Appearances, *Talley*, No. 2:20-cr-643 (D.S.C. Nov. 6, 2020), ECF No. 211.

[3] Motion to Dismiss Indictment, *Talley*, No. 2:20-cr-643 (D.S.C. Mar.17, 2021), ECF No. 338.

[4] Taylor also sued four individual defendants and the DEA. Taylor does not appeal the dismissal of the claims against those defendants. Similarly, Taylor asserted a claim (Count 1) under the Fourth and Fourteenth Amendments, which the district court dismissed as not falling within *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); JA 138–39, 146, and Taylor does not appeal that ruling.

license [sic] . . . should have alerted the defendants that the unknown suspect (Daniel Fra[z]er) was not [Taylor], due to differences in appearance, age, and address." JA 23. Taylor does not allege any differences in "appearance" or "age" specifically. JA 23. And he does not allege how the government would have known or cared about Frazer's "address" at the time they arrested Taylor (that is, before they knew Frazer was the person who had been using the car). JA 23. In any event, Taylor claimed that he "was unlawfully arrested by Defendants without any reasonable suspicion or probable cause." JA 24.

The United States moved to dismiss Taylor's FTCA claim for lack of subject matter jurisdiction under the discretionary function exception to the FTCA. JA 147–63. Before resolving the motion, the district court permitted limited discovery pertaining to relevant DEA "process, procedure, or policy." JA 186. *See also* JA 185–88, 192–201. The United States produced relevant portions of the DEA Agent's Manual. JA 223–25, 236, 247. Following discovery, the parties submitted two rounds of supplemental briefing on the motion to dismiss. *See* JA 202–18, 226–31, 233–49.

Taylor raised three main arguments. First, he contended that the government's motion to dismiss was barred by collateral estoppel. JA 175–80. Second, he argued the second prong of *Gaubert* was not met because the agents made a "decision to not investigate [him] due to personal racial bias and obtained a facially invalid

warrant lacking probable cause." JA 173. Third, he argued that *Gaubert*'s second prong was not satisfied because the agents failed to comply with several provisions of the DEA manual. *See* JA 226–30.

The magistrate judge recommended that Taylor's FTCA claim be dismissed based on the discretionary function exception. JA 250–76. Specifically, the magistrate reasoned that "an investigation—even an inadequate one—performed by a federal agency or its officers involves discretionary acts," JA 273, which are bound up in "public policy considerations," JA 274. And the magistrate concluded that Taylor "ha[d] not alleged egregious misconduct that would take this case outside the scope of the discretionary function exception." JA 276. After receiving Taylor's objection and the United States' response thereto, JA 278–300, the district court adopted the report and recommendation, concluding the discretionary function exception applied because Taylor challenged purely discretionary conduct involving public policy considerations, JA 301–07. Accordingly, the district court entered judgment for the United States. JA 309.

This appeal followed. JA 310.

## STANDARD OF REVIEW

This Court reviews the grant of a motion to dismiss for lack of subject matter jurisdiction de novo. *See Rich v. United States*, 811 F.3d 140, 144 (4th Cir. 2015). "When a defendant makes a facial challenge to subject matter jurisdiction," as the

United States did below, this Court accepts "the facts alleged in the complaint" as true, as it would under Federal Rule of Civil Procedure 12(b)(6). *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

## SUMMARY OF THE ARGUMENT

Having abandoned his arguments about racial bias and DEA policy noncompliance, Taylor now asserts that the discretionary function exception does not apply for two reasons. First, he argues that the alleged conduct was careless or lazy. *See* Opening Br. 15–27. Second, he argues that the alleged conduct violated the Constitution because the officers lacked probable cause to arrest him. Opening Br. 28–39. These new arguments fare no better than the ones Taylor focused on below. The district court properly dismissed Taylor's FTCA claim under the discretionary function exception.

The discretionary function exception applies where the challenged conduct is "discretionary in nature" and "susceptible to policy analysis." *Gaubert*, 499 U.S. at 322–23, 325. It is undisputed that the alleged conduct in this case—the DEA's investigative process for identifying a suspect—is discretionary. And for good reason: whether and how to investigate and identify a suspect based on evidence are core examples of discretionary conduct. *See Blanco Ayala*, 982 F.3d at 215.

The process of conducting an investigation and identifying a suspect is also inherently infused with public policy considerations. Law enforcement must decide

how extensively to investigate the crime, how to balance competing resources, and whether evidence is sufficient to establish probable cause and support prosecution, all of which require weighing the evidence and drawing factual and legal conclusions. *Id.* at 217–18. These are all classic discretionary judgments "'we would expect inherently to be grounded in considerations of policy.'" *Suter*, 441 F.3d at 311–12 (quoting *Baum*, 986 F.3d at 721).

Even if certain investigative activities could fall outside the discretionary function exception, that is not the case here. Taylor's attempts to mischaracterize the DEA's conduct as lazy (to the point of not being susceptible to policy analysis) fails. Taylor's own allegations demonstrate that the DEA conducted an investigation into the unknown suspect and used investigatory tools and judgment to identify him, albeit mistakenly. Such efforts involve all kinds of policy judgments, even when carried out imperfectly. Although the results in this case were unfortunate, Congress's decision to immunize discretionary law enforcement conduct that is negligent, even when it results "in harm to innocent third parties," *Suter*, 441 F.3d at 312, reflects legislative "willingness to tolerate the occasional mistake," *Blanco Ayala*, 982 F.3d at 217.

Taylor's assertion that the underlying conduct was unconstitutional likewise fails. The FTCA deals with torts that could be actionable under state (here, South Carolina) law—not free-floating constitutional claims. Regardless, Taylor's own

allegations demonstrate that the DEA obtained the vehicle information and a photograph of the car's registrant and then matched that photograph to the individual they observed participating in a drug sale with the vehicle. JA 23. The DEA then obtained an indictment and warrant from a grand jury, which "conclusively determines the existence of probable cause." *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012). The complaint does not allege that the DEA sought to mislead the grand jury. And the possibility that agents could have been "more thorough" "before seeking the arrest warrant does not negate the probable cause established by the . . . identification." *McKinney*, 431 F.3d at 418–19. Additionally, Taylor's allegations refute his theory of unlawful detention because he was released twenty-two days after his arrest, a full four months before law enforcement learned of its mistake and dropped the charges. In other words, law enforcement did not detain Taylor "beyond a time when they knew him to be innocent." *Gay v. Wall*, 761 F.2d 175, 179 (4th Cir. 1985).

Congress enacted the discretionary function exception specifically to "prevent interference by the judiciary in the policy-laden balancing that accompanies the exercise of executive discretion." *Blanco Ayala*, 982 F.3d at 214. Although the facts of this case (like those of many cases to which the discretionary function exception applies) are unfortunate, this Court should avoid such interference and affirm.

## ARGUMENT

### I. The District Court Properly Dismissed Taylor's FTCA Claims Under The Discretionary Function Exception.

#### A. The Discretionary Function Exception Applies To Discretionary Conduct Susceptible to Policy Considerations.

"[T]he United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). In the FTCA, Congress provided a "limited waiver" of that immunity for certain tort claims. *United States v. Orleans*, 425 U.S. 807, 813 (1976). But Congress also recognized that too broad a waiver could expose the United States to claims that would disrupt "important governmental functions and prerogatives." *Mozlof v. United States*, 502 U.S. 301, 311 (1992). So Congress cabined the waiver and enacted various exceptions, thereby "retain[ing]" the United States' "sovereign immunity with respect to certain governmental functions that might otherwise be disrupted by FTCA lawsuits." *Id.* at 311–12 (emphasis omitted).

Relevant here, the discretionary function exception preserves the United States' sovereign immunity for any claim "based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Its purpose is to "prevent judicial 'second-guessing'" of "governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (citation omitted). In other words, the

exception shows Congress's clear end of "prevent[ing] interference by the judiciary in the policy-laden balancing that accompanies the exercise of executive discretion." *Blanco Ayala*, 982 F.3d at 214.

Courts follow a two-prong test for determining whether challenged conduct falls within the discretionary function exception. *Gaubert*, 499 U.S. at 322–23. First, a court must determine whether the conduct was "discretionary in nature." *Id.* at 322. If "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," then "there is no discretion in the conduct" given "the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, a court must evaluate "whether that judgment is of the kind that the discretionary function exception was designed to shield," *Gaubert*, 499 U.S. at 322–23 (citation omitted)—which is to say, judgment that is "susceptible to policy analysis," regardless of whether such analysis occurred in a given case, *id.* at 325.

The district court correctly concluded that both prongs of the discretionary function exception are satisfied here.

**B. Taylor Challenges Purely Discretionary Actions.**

Taylor does not meaningfully dispute that the DEA conduct in question—criminal investigation and suspect identification—is purely "discretionary in nature," *Gaubert*, 499 U.S. at 322, because it necessarily involves "element[s] of

judgment or choice," *Berkovitz*, 486 U.S. at 536. For example, law enforcement must make "decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant," all of which "involves an element of judgment or choice." *Mesa*, 123 F.3d at 1438. And, as the magistrate judge explained, "[t]here are no mandatory federal statutes, regulations, or policies that specify the exact investigative steps the DEA must take to identify and arrest targets." JA 247. Because "discretion lies at the heart" of the "law enforcement function" Taylor challenges, the first prong of *Gaubert* is easily satisfied. *Blanco Ayala*, 982 F.3d at 215; *see also Medina*, 259 F.3d at 227 (a law enforcement decision to "arrest" an individual and commence further proceedings "satisfies the first prong of the *Berkovitz* test").

### C. Taylor Challenges Discretionary Conduct Susceptible To Policy Analysis.

The second prong of *Gaubert*'s test asks whether the discretionary judgment "is of the kind that the discretionary function exception was designed to shield," which is true if the challenged action is the sort of action that can be "based on considerations of public policy." *Berkovitz*, 486 U.S. at 536–37.

This analysis "focuses 'not on the agent's subjective intent in exercising the discretion . . . , but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Suter*, 441 F.3d at 311 (quoting *Gaubert*, 499 U.S. at 325). Thus, instead of looking to "whether policy considerations were actually

contemplated in making a decision," *Blanco Ayala*, 982 F.3d at 215 (citation omitted) (emphasis omitted), the court must "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy," *Suter*, 441 F.3d at 311 (quoting *Baum*, 986 F.2d at 720–21). And "if a government employee has discretion under the first *Gaubert* prong, it 'must be presumed' that his acts 'are grounded in policy when exercising that discretion.'" *Bernaldes v. United States*, 81 F.3d 428, 429 (4th Cir. 1996) (quoting *Gaubert*, 499 U.S. at 324); *Medina*, 259 F.3d at 228.

As a general matter, decisions about what conclusions or inferences to draw—both factual and legal—from collected evidence, and whether or not to devote time and energy to further investigative steps (and if so, which steps) are classic policy judgments. That is because determining "what to do with" gathered information involves law enforcement decisions about how to allocate "time" and "legal resources." *Blanco Ayala*, 982 F.3d at 218; *Suter*, 441 F.3d at 311–12 (noting discretionary judgments about how to best run an investigation are ones in which "'we would expect inherently to be grounded in considerations of policy'" (quoting *Baum*, 986 F.3d at 720–21)). "Investigations by federal law enforcement officials . . . clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation." *Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996).

This includes judgments about how to identify and locate a specific suspect and what evidence is sufficient upon which to base a conclusion. Investigating and identifying a suspect are discretionary judgments "infused with public policy considerations." *Blanco Ayala*, 982 F.3d at 217. For example, law enforcement might weigh "how extensively to investigate the location and identity of the subject" based on concerns of urgency, flight risk, or public safety. *Mesa*, 123 F.3d at 1438; *see also Torchinsky v. Siwinski*, 942 F.2d 257, 263 (4th Cir. 1991) (acknowledging "numerous reasons why a reasonable police officer might choose not to interview a suspect prior to arrest" based on public policy considerations); *Milligan v. United States*, 670 F.3d 686, 695 (6th Cir. 2012) (holding law enforcement's "conduct in investigating and apprehending [the suspect] was discretionary conduct that § 2680(a) intended to protect"). Agents might also account for "available resources and decide how to allocate those resources among the many investigations for which they are responsible." *Mesa*, 123 F.3d at 1438.

Taylor appears to believe the specific law enforcement agents in this case must have subjectively relied on public policy considerations in identifying him as the unknown suspect for the discretionary function exception to apply. *See* Opening Br. 27. To the contrary, this Court has made clear the proper analysis is *not* to look to "whether policy considerations *were actually* contemplated in making a decision" but whether the challenged conduct is not the kind that can be said to be grounded

in policy. *Clendening v. United States*, 19 F.4th 421, 435 (4th Cir. 2021) (quoting *Blanco Ayala*, 982 F.3d at 214–15).

Taylor does not meaningfully try to make that showing. Instead, he effectively argues that law enforcement acted negligently or made an error of judgment: the officers made a mistake when comparing "two brief visual identifications" with the driver's license photograph to identify him as a suspect. JA 22–23; *see also* JA 23 (alleging that (vague) differences in age and appearance should have alerted law enforcement he was not their intended suspect). Taylor's real gripe is that the agents "failed to use any *other* investigation methods to determine who the real owner and driver of the red Nissan Altima actually was." JA 23 (emphasis added). But "the discretionary function exception protects government decisions 'even when made negligently,'" *Blanco Ayala*, 982 F.3d at 216 (quoting *Wood*, 845 F.3d at 128), "'the discretion involved be abused,'" *id.* (quoting 28 U.S.C. § 2680(a)), or the government actor makes "a mistake," *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 181 (4th Cir. 2009). That is because "[t]he ultimate decisions of law enforcement officers need not be correct in order to be exempted from the FTCA's waiver of sovereign immunity under the discretionary function exception," *Blanco Ayala*, 982 F.3d at 216, which remains true even if the challenged actions "result in harm to innocent third parties," *Suter*, 441 F.3d at 312.

Recognizing these principles, numerous courts have concluded that claims just like Taylor's—that law enforcement was negligent by incorrectly identifying and arresting a suspect—fall within the discretionary function exception. For example, in *Awad v. United States*, law enforcement identified a suspect who sold drugs to an undercover agent using only video surveillance of the sale and then arrested the suspect pursuant to a warrant. 807 F. App'x 876, 877 (10th Cir. 2020). After he was detained for nearly six months, law enforcement learned he was in fact not the suspect recorded in the video and released him. *Id.* The Tenth Circuit held that the discretionary function exception applied because 1) "the investigation and identification of suspects" and "deciding whether probable cause has been established" are discretionary judgments, and 2) "investigative decisions, which include the process of verifying a suspect's identity, are rooted in policy considerations" given that "DEA agents must account for social policy considerations such as whether and what type of weapons to use, the types of investigative techniques that may be appropriate, [and] the surveillance methods that would be most effective." *Id.* at 880–81 (cleaned up).

The Eleventh and Sixth Circuits have reached similar conclusions in cases of mistaken identification of suspects. In *Mesa*, the Eleventh Circuit addressed an alleged "fail[ure] to properly ascertain the identity of the person on whom [an] arrest warrant was served." 123 F.3d at 1436. Even then, the court reasoned that suspect

identification is "grounded in considerations of public policy" such as "the possible repercussions of erroneously deciding that the person they apprehended is not in fact the person named in the warrant and letting that person go free," creating "a serious danger to public safety," or risk of "the person" "destroy[ing] evidence" or evading "future capture." *Id.* at 1438–39. The Sixth Circuit adopted the same reasoning. *See Milligan*, 670 F.3d at 693–96. If "verifying whether the apprehended person is actually the suspect named in the warrant is grounded in considerations of public policy," *id.* at 695 (internal quotation marks omitted), so is the more complex task of figuring out who should be named in the warrant to begin with.

In sum, "Congress did not intend to provide for judicial review of the quality of investigative efforts." *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986), *cert. denied*, 479 U.S. 849 (1986), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013). Narrowing the discretionary function exception to exclude this sort of investigative judgment "would stymie the very purpose of the discretionary function exception by permitting the second-guessing of policy through a tort action." *Suter*, 441 F.3d at 312. This Court should not take that step, particularly given that the officers here made a mistaken judgment based on evidence that Taylor does not allege was factually inaccurate or falsified, let alone by the officers themselves. *See* JA 23 (alleging only that Frazer put the car in Taylor's name to secure car insurance).

## II. Taylor Fails to Overcome The Discretionary Function Exception.

### A. The DEA's Investigation Did Not Rest On The Sort Of Careless Or Lazy Conduct That Is Categorically Not Susceptible To Policy Analysis.

Despite not developing this argument before the district court,[5] Taylor tries to reframe his allegations on appeal as contending that the DEA agents were lazy and careless. But Taylor did not (and could not) plausibly allege that they were lazy or careless in the relevant sense: that the type of conduct at issue is not susceptible to policy considerations. In fact, he did not plausibly allege they were lazy or careless (as opposed to negligent) at all.

To be sure, this Court has stated that actions "marked by individual carelessness or laziness" unconnected to public policy considerations may fall outside *Gaubert* prong two. *Rich*, 811 F.3d at 147. There, "a nine-inch-long knife was recovered at the scene" of a prison attack, "at least suggest[ing] the possibility of careless inattention." *Id.* at 147. Given that the Bureau of Prisons had a policy setting forth "specific directives" for pat-down searches of prisoners, "no policy considerations would be implicated" in departing from that protocol, so the discretionary function exception did not facially apply. *Id.* But that holding is tempered by Congress's command that bare allegations of negligence or abuse of discretion do not place government conduct outside the discretionary function

[5] At most, Taylor raised the carelessness point in broad strokes without meaningfully explaining how it applies in this case. JA 294–95.

exception. *See* 28 U.S.C. § 2680(a); *Blanco Ayala*, 982 F.3d at 216. The critical consideration is whether the alleged conduct is so lazy and careless that it is not even possible that the judgment is "grounded in public policy considerations." *Palay*, 349 F.3d at 432; *see also Rich*, 811 F.3d at 147.

Consider a few examples, which collectively reflect this distinction. On one hand, driving a vehicle in the course of employment might entail the discretionary judgment inherent in driving, but those judgments are not rooted in political or economic considerations. *See Dalehite v. United States*, 346 U.S. 15, 34 (1953). Neither is a corrections officer leaving his post unattended "in order to enjoy a cigarette or a snack," or because he fell sleep. *Tyree v. United States*, 814 F. App'x 762, 768–69 (4th Cir. 2020). Or an employee's failure to notice a frayed cable. *Clendening*, 19 F.4th at 435. Or a prison guard's total failure to pay attention while performing an inmate pat down. *See Rich*, 811 F.3d at 146–48. Those types of decisions *categorically* do not implicate important "public policy considerations." *Tyree*, 814 F. App'x at 768–69. On the other hand, a prison official's determination of how and when to inspect gym equipment may be grounded in public policy considerations such as resource allocation. *Clendening*, 19 F.4th at 435. So too would a prison guard's decision on "prisoner placement and the handling of threats posed by inmates against one another," *Rich*, 811 F.3d at 145–46, or even a guard's

decision to delay his response time to an inmate attack if he had "other ongoing inmate issues," *Tyree*, 814 F. App'x at 768.

Here, Taylor's allegations cannot be seriously construed as challenging the sort of conduct that is careless or lazy to the point of not being susceptible to policy explanations. As an initial matter, the complaint did not even allege that the DEA agents identified Taylor as the unknown suspect due to laziness or carelessness (or mention any variation of "careless" or "lazy" behavior at all). Instead, it alleges that the DEA agents took affirmative steps to identify the unknown suspect by conducting surveillance, pulling the vehicle's registration and the license of the registrant, then matching the registrant's picture to the suspect they visually observed. JA 23. At most, the complaint asserts that the driver's license photograph "should have alerted" the agents that Taylor was not the suspect. JA 23. The fact that the agents got the match wrong after the true suspect registered his car in Taylor's name may arguably indicate negligence, but it does not reflect the sort of simple mistake or failure to act that falls outside the discretionary function exception.

*Martin v. United States*, 605 U.S. 395 (2025), and other cases concerning wrong-house-raids, are not to the contrary. As an initial matter, *Martin* did not purport to apply any rule that lazy or careless conduct falls outside the discretionary

function exception.[6] And to the extent *Martin* contemplated the possibility that the discretionary function exception could be inapplicable to certain wrong house raids, such circumstances are nothing like this case. The agents in *Martin* "had done surveillance to confirm their intended target, and yet somehow chose the wrong target when it came time to make the arrest," Opening Br. 23, by failing to notice the differing street signs and house number from the practice run the day before, *Martin*, 605 U.S. at 400. But such an error—simply driving to a house the investigation had not even pointed to—was not the product of any actual investigative work. By contrast, here law enforcement arrested the subject to which their investigation, and actual evidence, led them.

Even if the former mistake (analogous to failing to follow straightforward directions) is not susceptible to a policy analysis, the latter (more analogous to deciding where and when to go in the first place) plainly is. Exercising investigative judgment to identify a subject of law enforcement surveillance inherently requires "economic, political, and social policy considerations" such as determining what "types of investigative techniques" are most "appropriate." *Awad*, 807 F. App'x at 881. Other considerations include drawing inferences from gathered evidence,

[6] After clarifying that the FTCA's law enforcement proviso does not supplant the discretionary function exception, the Court remanded for the Eleventh Circuit to conduct the discretionary function exception analysis in the first instance. *Martin*, 605 U.S. at 414.

making probable cause determinations, and assessing whether further resources should be expended to increase confidence in that judgment. *Id.* at 881. All of those decisions require "discretion in allocating their time" and "legal resources." *Blanco Ayala*, 982 F.3d at 218. In sum, because the DEA agents exercised judgment to draw a conclusion from evidence they gathered through affirmative investigatory steps, they did not engage in the sort of absent-minded carelessness discussed in the authorities that Taylor cites.[7]

**B. Taylor Cannot Avoid The Discretionary Function Exception By Pointing To Any Constitutional Violation.**

In another attempt to avoid the straightforward *Gaubert* analysis, Taylor contends the discretionary function exception cannot shield unconstitutional conduct, namely, unlawful arrest and detention. Opening Br. 32–39. That argument distorts precedent. And in any event, Taylor does not allege unconstitutional conduct on the part of the DEA agents.

**1.** Taylor's argument that unconstitutional conduct is per se barred from falling within the discretionary function exception misunderstands the FTCA.

---

[7] Taylor criticizes the district court for supposedly adopting a "categorical ruling" that "[t]he decision as to how to locate and identify the subject of an arrest warrant prior to service of the warrant is susceptible to policy analysis." Opening Br. 3 (quoting JA 307). But that general description of the law is (at a minimum) correct in the vast majority of cases. And it is clearly correct in *this* case. Nothing required the district court to qualify its language based on inapt caselaw discussing easily distinguishable circumstances—particularly where Taylor himself did not focus on that caselaw below.

Opening Br. 28–31. To be sure, this Court has stated (in dicta) that "[f]ederal officials do not possess discretion to violate constitutional rights." *Medina*, 259 F.3d at 225 (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1998)). But there is no cause of action for "constitutional violations" under the FTCA. *Linder*, 937 F.3d at 1090. As this Court has recognized, the FTCA "applies to torts, as defined by state law." *Id.* (citing 28 U.S.C. § 1346(b)(1)); *accord Medina*, 259 F.3d at 226 ("[T]he very purpose of the . . . discretionary function exception is to immunize certain agency conduct that might violate state law."). For that reason, "the theme that 'no one has discretion to violate the Constitution' has nothing to do with the [FTCA]." *Linder*, 937 F.3d at 1090; *accord Shivers v. United States*, 1 F.4th 924, 932 (11th Cir. 2021) ("[T]here is no 'constitutional-claims exclusion' to the statutory discretionary function exception (to the FTCA's waiver of sovereign immunity).").

Understood in that context, *Medina* stands for the modest proposition that a constitutional mandate, no less than a federal statutory or regulatory one, can eliminate a government official's discretion when it "prescribes a course of action" with sufficient "specific[ity]." *Gaubert*, 499 U.S. at 322 (citation omitted). Taylor does not allege that is the case here. Indeed, Taylor's constitutional claims were dismissed on grounds that Taylor does not even appeal. *See* n.5, *supra.* He cannot now smuggle those claims back into this case through the FTCA.

**2.** Regardless of whether a FTCA theory about unconstitutional conduct may be viable in other cases, Taylor's allegations do not demonstrate unlawful arrest. Taylor contends his arrest was unconstitutional because he was detained without probable cause, Opening Br. 33–37, but that argument ignores binding precedent and is unsupported by his allegations.

Taylor was arrested after the grand jury returned an indictment and the issuance of a warrant.[8] "It has long . . . been settled by the Supreme Court that "an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." *Durham*, 690 F.3d at 189 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19 (1975)). True, an indictment's "conclusive effect," can be overcome if an officer "'deliberately supplied misleading information that influenced the decision,'" *id.* (quoting *Goodwin v. Metts*, 885 F.2d 157, 162 (4th Cir. 1989)), or "intentionally or recklessly" made "material misrepresentations or omissions" to secure an warrant otherwise lacking probable cause, *Miller v. Prince George's Cnty.*, 475 F.3d 621, 630 (4th Cir. 2007). But Taylor never alleged anything of the sort. And Taylor cannot amend his complaint via broad assertions to the contrary before this Court. *See* Opening Br. 37; *cf. Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008)

[8] *See* Indictment, *Talley*, No. 2:20-cr-643 (D.S.C. Oct. 20, 2020), ECF No. 3.

("A plaintiff may not amend her complaint through argument in a brief." (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))).

While ignoring the conclusive effect of the indictment, Taylor contends the officers lacked probable cause or even a reasonable suspicion to arrest him because the DEA "had conducted 'no investigation' of Mr. Taylor." Opening Br. 35. That makes no sense. As evidenced by his own allegations, the DEA agents conducted an investigation that led them to Taylor. *See* JA 22–23 (detailing that agents monitored and recorded phone conversations, ¶ 7; agents observed the driver of the Nissan meet with the known conspiracy member, ¶ 8, an officer observed the driver of the Nissan and the known conspiracy member meeting at a Taco Bell, ¶ 9, and agents ran information through a database in order to—albeit incorrectly—identify the unknown suspect as Taylor, ¶ 10). The DEA thus had reason to believe Taylor was the unknown suspect they observed participating in a drug sale with a known conspiracy member at the time they sought an indictment from the grand jury. What Taylor really means is that the agents "failed to use any *other* investigation methods" beyond the ones described in the complaint. JA 23. But "[t]he fact that [the agents] did not conduct a more thorough investigation before seeking the arrest warrant does not negate . . . probable cause." *McKinney*, 431 F.3d at 418–19. Neither does the bare statement that Taylor's driver's license "should have alerted" the agents. JA 23. That is, at most, negligence.

For all those reasons, this case is nothing like *Smith v. Munday*, 848 F.3d 248 (4th Cir. 2017). There, after receiving the name of a suspect from a confidential informant, an officer merely "ran a broad search in the department's database of individuals with criminal histories, looking for a woman of the same name." *Smith*, 848 F.3d at 253. Upon getting two hits in the system, he chose one "for no immediately apparent reason." *Id.* But here, the agents' identification of Taylor was not random; it was premised on the red Nissan Altima being registered in Taylor's name and law enforcement's visually matching Taylor's photograph with the individual they observed meeting with the known suspect. JA 23.

Taylor also claims the DEA ignored exculpatory information. Opening Br. 36. This theory, too, makes little sense. Although Taylor claims he "did not look like Frazer, that the two were different ages, and that the two lived at different addresses," Opening Br. 37, "[a] court should only consider the information the officers had at the time they sought the warrant" in assessing probable cause, *Smith*, 848 F.3d at 253. Taylor's allegations make clear that the officers had no idea who Frazer was at the time of the misidentification. Because they were seeking to identify an *unknown* suspect (who merely turned out to be Frazer in hindsight), nothing in the complaint alleges that the officers had any reason to know Frazer's age or address. And they only knew his looks based on "two brief visual identifications" while conducting surveillance. JA 23.

In hindsight, law enforcement got the identification wrong. Law enforcement is often limited by imperfect evidence and "[i]t will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence." *Torchinsky*, 942 F.2d at 264. But the question before the Court is "not whether the officer exhausted every potential avenue of investigation." *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000). There is simply no constitutional violation stemming from "arrest based on probable cause, even if the wrong person is arrested." *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994) (citing *Hill v. California*, 401 U.S. 797 (1971)).

**3.** Taylor's own allegations indicate that he was released from custody before the DEA agents even learned of the misidentification, negating his assertion of unlawful detention. "The negligence was discovered and the charges were dismissed on or about March 18, 2021," nearly four months *after* his release. JA 23. Taylor now tries to rewrite his complaint by arguing on appeal that he "was detained beyond the time the agents knew that he was not Frazer, the person they had been seeking." Opening Br. 48. Nothing in the complaint supports that. And, once again, the Court should reject Taylor's improper attempt at amendment via briefing out of hand. *See, e.g.*, *Barclay White Skanska, Inc.*, 262 F. App'x at 563; p. 27–28, *supra*.

To the extent Taylor contends the agents *should have* known about the misidentification before or during the detention, Opening Br. 39, his argument still

fails. The question is when law enforcement "had actual knowledge." *Gay*, 761 F.2d at 178; *see also Baker v. McCollan*, 443 U.S. 137, 145–46 (1979) (explaining officers have no obligation "to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent"). This is simply not a case in which Taylor alleges the officers detained him "beyond a time when they knew him to be innocent." *Gay*, 761 F.2d at 179.

In sum, even if this Court takes the view that constitutional violations are categorically excluded from the discretionary function exception, no constitutional violation occurred here because the arrest was supported by probable cause stemming from the DEA's investigation into the unknown suspect, and law enforcement did not detain Taylor once learning of their mistake in identifying him as the unknown suspect.

## CONCLUSION

This Court should affirm.

Respectfully submitted,

BRYAN P. STIRLING
United States Attorney

LEE E. BERLINSKY
Assistant United States Attorney
United States Attorney's Office
151 Meeting Street, Suite 200
Charleston, South Carolina 29401

By: *s/ Anna L. Edwards*
ANNA L. EDWARDS
Counsel to the Associate Attorney General
SC Bar No. 106038
950 Pennsylvania Ave NW
Washington, DC 20530
(202) 812-2249

May 6, 2026

## STATEMENT REGARDING ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case. The facts and legal issues are adequately presented in the materials before the Court, and oral argument likely would not aid the Court in reaching its decision.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing *en banc* may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains 7,463 words.

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using

**Microsoft Word 365** in **Times New Roman 14 Point**.

*/s/ Anna L. Edwards*
Counsel to the Associate Attorney General
Attorney for Plaintiff-Appellee
Dated: May 6, 2026

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document through the Court's CM/ECF system on May 6, 2026. I certify that all participates in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Anna L. Edwards*
Counsel to the Associate Attorney General
Attorney for Plaintiff-Appellee
Dated: May 6, 2026